[Civ. No. 23864.   Second Dist., Div. Three.   Feb. 4, 1960.]

GOLDIE WHITE, Appellant, v. VIVIAN J. SHULTIS et al., Respondents.

Elmer Low for Appellant.

Gilbert, Thompson & Kelly and Spray, Gould & Bowers for Respondents.

SHINN, P. J.—This is an appeal from judgment of nonsuit in an action following an accident in which plaintiff, while crossing Foothill Boulevard in Pasadena, was struck by an automobile driven by Vivian J. Shultis (hereinafter referred to as defendant). Also named as a defendant was Kenneth Elgin, Inc., a corporation, claimed to have been the employer of Shultis, who allegedly was acting within the scope of her agency and employment. At the close of plaintiff's case, the court's decision was stated as follows: "The court finds no negligence on the part of the defendant, and finds contributory negligence on the part of the plaintiff. The motions for nonsuit are granted as to all defendants." We are of the opinion that the motion of defendant Shultis was improperly granted.

Plaintiff was 61 years of age. For some seven years she had operated a letter writing and copying service in her home a short distance north of Foothill; on the day of the accident she was carrying a bag with some 200 letters and her course was from north to south across Foothill to a Safeway Store. The tracks of the Santa Fe Railroad extend across Foothill in a northwesterly-southeasterly direction. Two painted white lines located about 18 feet east of the railroad track and parallel thereto extend across the northerly half of Foothill. Similar white lines extend across the southerly half of Foothill, the same distance west of the tracks and parallel to the same. These do not constitute a marked pedestrian crosswalk. However, a pedestrian crossing Foothill, either within or across said white lines, does not thereby violate the law. At the most northerly end of the white lines which lie east of the track is a railroad wigwag signal and there is also a vehicular traffic signal which shows either red or green to govern westbound traffic on Foothill. We are concerned only with such westbound traffic. The signal is not designed to control movements of pedestrians. There is no north-south vehicular traffic. The white lines on the pavement indicate a stopping point for westbound cars while the light is red. No stopping at that point is indicated when the light is green; the warning then consists of the wigwag signal. Some 150 feet west of the traffic signal first mentioned, hereinafter referred to as signal Number 1, is a similar signal at the intersection of Greenwood Avenue and Foothill, hereinafter referred to as signal Num-

ber 2. This is synchronized with signal Number 1. We mention the signal at Greenwood for the reason that westbound drivers at the point of signal Number 1 have in view not only that signal but also signal Number 2 which would be directly ahead of them.

There was evidence of the following facts. In broad daylight plaintiff approached the point of signal Number 1, intending to cross Foothill. She observed that the light had turned red and that cars headed west were stopped at the white lines east of the tracks. There were several cars standing. The car nearest to the north curb was not identified in the evidence. The Shultis car was immediately south of it and some 3 feet distant. It was close to double white lines marking the center of the highway. Plaintiff left the curb and started across Foothill on a line parallel with the railroad tracks and some 2 feet in front of the cars. She observed that they were stopped and, as she proceeded, continuously observed them to see whether they remained stopped; the first car remained stationary and she passed it in safety. Thereupon, according to her testimony, the second car "lunged" forward; she remembered throwing up her hands, being struck by what she believed was the front fender of the car and also being struck a severe blow on the head by what she believed was the door handle; she was knocked to the ground; when the car stopped she was seated on the ground with one foot under the car at the right rear wheel. She sustained serious injuries.

Defendant Shultis, called under section 2055, Code of Civil Procedure, gave her version of the accident. She had operated a car for many years; she was familiar with the locality; she stopped because the traffic light was red. She could see signal Number 1 and also signal Number 2. She was looking straight ahead, waiting for the lights to turn green; there was no obstruction between her and the sidewalk and curb area where plaintiff left the curb; she could see that area. She did not see plaintiff standing at the curb and expressed the opinion that plaintiff could not have been there. She did not see plaintiff in the street or when she came into contact with the car or until she, the witness, had left her car and found plaintiff sitting on the pavement. She started up in low gear when the light turned green. She stopped in about a car's length, or where her right rear wheel was on the first rail of the railroad track; she felt a "dull thud" which sounded as if something had hit the front fender or the glass and she thought she had struck a dog. These are the salient facts of the accident.

It is at once apparent that under the rules by which trial courts must be guided in ruling upon motions for nonsuit (see *Mastrangelo* v. *West Side Union High School Dist.*, 2 Cal. 2d 540 [42 P.2d 634]), the court was not justified in concluding as a matter of law either that defendant was not guilty of negligence or that plaintiff was guilty of contributory negligence. Under these rules the court must accept all evidence favorable to the plaintiff, disregard evidence in conflict with the same, must draw all reasonable inferences that are favorable to plaintiff's case, disregarding those that are unfavorable. The court is not permitted to weigh the evidence to determine where the preponderance lies nor to pass upon the credibility of the witnesses and must deny the motion for nonsuit if in its most favorable aspects plaintiff's evidence would justify a recovery upon any theory. Defendant Shultis recognizes this rule and with respect to plaintiff's testimony, urges us to affirm the judgment upon the hypothesis that the trial court would have been justified in rejecting plaintiff's testimony, and presumably did reject it, upon the ground that it was inherently improbable. An attempt is made to show the inherent improbability of her testimony that she started across the street with a red light and that she was watching the cars. It is a vain attempt. Defendant testified that the red light was on until she started her car. Our attention has not been called to anything in the record to indicate that the court doubted, or that it had reason to doubt the truth of plaintiff's account of the accident. It is true that in her cross-examination plaintiff was uncertain where she was when she saw the light turn red and that she was not sure what part of the car struck her but these were trivialities which should have been and no doubt were disregarded by the court.

With respect to the conduct of defendant, while it is conceded that she had an unobstructed view of plaintiff's approach from the right, it is contended that this does not mean that plaintiff was in plain view, for the reason that the driver of a car "should not be expected in the exercise of ordinary care to observe individuals approaching from the right who walk practically at right angles into the motorist's car, as must have been the case in this situation." Defendant says: "Plaintiff was discoverable by defendant only by turning her gaze to the right" and that this was no part of her duty. There is no such rule of law. Defendant is driven to the contention that she had no duty to look elsewhere than straight ahead as a consequence of her testimony

that she was looking only straight ahead toward the traffic light which she could see at Greenwood, and that she gave no thought to the possibility that a pedestrian might be in the act of crossing the street in front of her. Although pedestrians would have been required to yield the right of way to her she was nevertheless under a duty to exercise ordinary care to observe whether there were pedestrians in sight. (*Quinn* v. *Rosenfeld,* 15 Cal.2d 486 [102 P.2d 317]; *Wiswell* v. *Shinners,* 47 Cal.App.2d 156 [117 P.2d 677]; *Jacoby* v. *Johnson,* 84 Cal.App.2d 271 [190 P.2d 243].) It requires neither argument nor citation of authority to demonstrate that upon the testimony of defendant alone she could have been found guilty of negligence.

It was argued to the trial court and is asserted here that if defendant was negligent in not seeing plaintiff, the latter was also negligent because she did not see defendant's car in motion before the accident and because she did not yield the right of way after the car started up. It is asserted that plaintiff was negligent because even if the red light was on when she started across the street she should have stopped when the light changed to green and should have kept out of the way of defendant's car when it started up. While these arguments prevailed in the trial court they cannot prevail on the appeal.

This is not the ordinary case where a pedestrian endeavors to cross a street at a point other than at an intersection or marked crosswalk. Although there was no marked crosswalk at the point in question, the conditions were such as to indicate to a pedestrian that it would be a suitable point at which to cross the street. The traffic signal which made it obligatory for vehicles to stop conveyed to pedestrians knowledge of the fact that during the intervals when vehicles were stopped the highway might be crossed in safety. The condition had existed to plaintiff's knowledge for seven years, during all of which time she was aware of the fact that vehicles stopped in obedience to the signals. If a pedestrian enters a street lawfully the fact that he has not allowed himself time to cross before a signal changes does not render him guilty of negligence as a matter of law.

Plaintiff was not violating the law in attempting to cross the street and there was nothing in her subsequent conduct that would have required a finding that she was negligent. It would have been necessary for the car to move only about two feet to come into contact with her. Even if she had

seen the car start to move it would have required instantaneous action to avoid contact with it. She was watching the cars to see if they remained stationary. There was no traffic signal ahead for her to watch. It would appear to be a reasonable conclusion that when defendant's car "lunged" forward, as described by plaintiff, she could not have escaped contact with it in the exercise of ordinary care. The questions of negligence and contributory negligence were clearly factual, decision of which should have been deferred until the case had been submitted on the merits.

We have been referred by defendant to a number of cases in which judgments of nonsuit were affirmed or judgments for plaintiffs in personal injury cases were reversed upon the ground that the evidence when considered in the light most favorable to the plaintiff was insufficient to warrant a judgment in his favor. There would be no point in analyzing any of the cases cited except to point out the dissimilarities in the factual situations from those of the present case. There are no significant similarities.

In the past we have had occasion to comment upon the anomalous situation which results from applying to a judgment of nonsuit in a nonjury case the same rules that are applied in jury cases. (*Lasry* v. *Lederman*, 147 Cal.App.2d 480 [305 P.2d 663].) Here defendant had testified fully as to the circumstances of the accident. If, instead of moving for a nonsuit, she had submitted her case without evidence other than that furnished by her own testimony, the judgment, of course, would have been in her favor. Although she prevailed on her motion for nonsuit, it was a hollow victory. Under applicable rules we are obliged to reverse the judgment of nonsuit even though the trial court was convinced by the testimony of the parties that plaintiff was negligent and defendant was not.

Plaintiff contends that certain of her proposed evidence was improperly excluded. Inasmuch as the question may arise on a retrial we deem it advisable to express our view that no error was committed in excluding the proposed evidence.

The locality of the accident was where Foothill, Walnut and Greenwood converge. Within this areas are six traffic signal lights. A great deal of time and effort was devoted to evidence respecting the operation of these signals. Plaintiff contends that it was error for the court to exclude more evidence which she offered upon this subject. It appears to us that the evidence that was received was not only irrele-

vant to the issues but utterly confusing. Only one signal was involved. We summarize the testimony of a traffic analyst of the Pasadena Police Department in the margin.[1]

The purpose of this lucid explanation was to show that if one phase is not actuated and another phase is not actuated, a pedestrian waiting to cross Walnut at Greenwood might have to wait 24 hours or ''forever.'' Plaintiff made an offer to prove by residents of the area that they considered crossing along the railroad track to be safe and at other points to be unsafe. Any opinions expressed by the proposed witnesses respecting what would be a safe or an unsafe route to take in crossing the highway would have been incompetent as evidence upon the issues of negligence and contributory negligence of the parties.

■ It was alleged in the complaint that defendant Shultis was an agent and employe of Kenneth Elgin, Inc., acting within the purpose and scope of said agency and employment. This issue is ignored in appellant's opening brief. Although in her reply brief she claims that the court should not have granted a nonsuit as to Elgin, she makes no reference to the evidence respecting the relationship of Shultis and Elgin. This amounts to an abandonment of the appeal so far as it affects Elgin.

The judgment in favor of defendant Shultis is reversed; as to defendant Kenneth Elgin, Inc., it is affirmed.

Vallée, J., and Ford, J., concurred.

---

[1]Standing before a blackboard the witness said: ''Phase A of the signal has an actuating plate in the street here. The railroad crossing through here has an actuating plate just northeast of the railroad crossing. This is Phase A. Stopping points on Phase A are at this point. This is the first sequence of the signal which operates. In other words, vehicles on Phase A hitting this plate obtain a green light which permits vehicles to go in this direction, this direction, these around here, and this around here and left turns either down Greenwood or around on Walnut. On Phase B, there is an actuating plate on Walnut Street here which actuates traffic in this direction only. At that time, on Phase B, these are stopped, permitting only westbound Walnut Street traffic to go. Phase C is actuated by a plate on Greenwood Avenue, which permits only Greenwood traffic to go either straight through, left or right turns. The signal is what they call an 826-E full actuated signal. Unless the phase is called for, the recall automatically puts it back onto Phase A. But unless any particular phase is called for, it will remain on Phase A. In other words, if Phase A and Phase B are actuated and Phase C is not called for, at the end of Phase B it will automatically go back to Phase A. If Phase A is operating and Phase C is called for, it will skip Phase B unless there is a call for it in the meantime. In other words, it doesn't make a continuous sequence each trip, except that the recall is on the signal and it will always go back to Phase A which stays green normally.''