[Civ. No. 10833. Third Dist. Oct. 14, 1964.]

SONIA FERREIRA, a Minor, etc., et al., Plaintiffs and Appellants, v. REBECCA BARHAM, a Minor., etc., et al., Defendants and Respondents.

P. M. Barceloux, Burton J. Goldstein, Goldstein, Barceloux & Goldstein and Reginald M. Watt for Plaintiffs and Appellants.

Rich, Fuidge, Dawson, Marsh, Tweedy & Morris, Thomas A. Tweedy and Pelton, Gunther & Gudmundson for Defendants and Respondents.

PIERCE, P. J.—On this appeal from a judgment of non-suit the only contention is that California's guest statute (Veh. Code, § 17158) is unconstitutional as a denial of due process and of equal protection of the laws. (U.S. Const., 14th Amend.) We disallow the contention.

Plaintiff, Sonia Ferreira, a minor (hereinafter referred to as "plaintiff"), admittedly riding as a guest of 15-year-old defendant Rebecca Barham, operator of an automobile, was injured when the automobile left the road, rolling on its side.

The complaint was in three causes of action, the first against the County of Glenn, alleging faulty road maintenance, the

second alleging negligent operation of the vehicle by Rebecca, and the third alleging her wilful misconduct. A demurrer to the first cause of action against the county was sustained on the ground that plaintiff had failed to file a claim with the county as required by Government Code section 53052. Judgment followed which this court affirmed on appeal. (*Ferreira* v. *County of Glenn,* 176 Cal.App.2d 751 [1 Cal.Rptr. 585].)

In March 1963 the second and third causes of action were tried. Plaintiff, the only person to testify, related that defendant Rebecca Barham, a 15-year-old girl, had not been drinking, no wilful misconduct was shown, and nonsuit was granted by the court on both causes of action. The appeal, as stated above, concerns only the ruling on the second cause of action where the pleading was limited to the negligence of defendant Rebecca Barham.

The sole contention is that the guest statute violates ''due process'' and ''equal protection.'' Argument on these grounds is expressed not only in the brief and oral argument made in the case at bench but is supplemented by a comprehensive study of ''the rights of man'' in a brief filed in another case, *Flournoy* v. *State,* 3 Civil No. 10876, pending before this court. The *Flournoy* case involves the question *inter alia* of the validity of California's 1963 governmental immunity legislation. (Stats. 1963, ch. 1681; Gov. Code, § 810 et seq.) The brief in that case is also made a part of two other cases pending in this court, *Hayes* v. *State,* 3 Civil No. 10916, and *Morgan* v. *County of Yuba,* 3 Civil No. 10636. In all of these cases appellants are represented by the same counsel. The propositions advanced by appellants may be epitomized by a summarization of the conclusion as expressed in the brief in the instant case: That appellants are ''talking about the Rights of Man as protected by the Constitution of the State of California and the Constitution of the United States of America.'' That among these is ''the right to be free from the negligent conduct of others. And these rights are protected by the due process and equal protection clauses of the state and federal constitutions,'' and appellant asks: ''Why should I not have to be as careful to my friend at my right in the front seat of the car I am driving as the law requires me to be to a stranger in a cross-walk? It is also asked: Should a statute be constitutional ''which provided that automobile drivers shall not be liable for negligence but only for wilful misconduct''?

The question is without novelty. In California and else-

where validity has been firmly established against the charges raised not only as regards guest statutes but also of others analogous. The rule applied in these cases is that the Legislature may constitutionally alter, modify or eliminate prospectively common law rules governing private tort liability where it acts reasonably upon the basis, and within the scope, of its regulatory police power. And specifically, the rule is settled that "wilful misconduct" guest laws ARE a proper exercise of such power. We would, therefore, limit discussion here to the foregoing statement and a citation of authority but for the fact that a more detailed analysis of the same authorities will be pertinent to the more complex questions involved in the above referred to cases before us involving the validity of the 1963 governmental immunity statute. The results of that case study may as well be expressed here insofar as it deals with the limited question at issue in this case.

First of all it may be stated that our California Supreme Court has flatly—and quite recently—asserted the existence of broad legislative powers in the general field of discussion we enter. In 1948 in *Modern Barber Colleges* v. *California Employment Stab. Com.*, 31 Cal.2d 720 [192 P.2d 916], it stated on page 726, that the Legislature "has complete power to determine the rights of individuals. . . . It may create new rights or provide that rights which have previously existed shall no longer arise, . . ." And in 1927 it said in *Fall River Valley Irrigation Dist.* v. *Mt. Shasta Power Corp.*, 202 Cal. 56, at page 67 [259 P. 444, 56 A.L.R. 264] : "No question can arise as to the power of the legislature to modify or abrogate a rule of the common law." We now turn to cases dealing with the legislative power as regards regulation of tort liability involving the guest-host relationship.

California's original guest law was adopted in 1929. (Stats. 1929, ch. 787, p. 1580.) It added a new section 141¾ to the California Vehicle Act by which ordinary negligence was eliminated as a basis for recovery in guest cases, the host's liability being limited to intoxication, wilful misconduct, or gross negligence. In 1931 gross negligence was eliminated, thus restricting liability to intoxication or wilful misconduct. (Stats. 1931, ch. 812, p. 1693.) The constitutionality of the amendment was challenged in an action in this court (*Forsman* v. *Colton*, 136 Cal.App. 97 [28 P.2d 429]) on the charge that it violated the state constitutional provision (art. I, § 13) which contains a "due process" clause. Validity was upheld. Strength of the decision as precedent may be questioned (and has been by appellants) because the decision was

based upon two cases, *Castro* v. *Singh*, 131 Cal.App. 106 [21 P.2d 169], and *Callet* v. *Alioto*, 210 Cal. 65 [290 P. 438], both of which may be said to have assumed validity but neither of which expressly considered the question. (Both held the guest law could not be applied retroactively.)

But in a very recent case, *Patton* v. *La Bree* (Dec. 1963), 60 Cal.2d 606 [35 Cal.Rptr. 622, 387 P.2d 398], the California Supreme Court again had the guest law before it. That case involved a 1961 amendment to the law (then and now codified in Veh. Code, § 17158). The amendment extended the restrictions of the law by providing "No person riding in or occupying a vehicle owned by him and driven by another person with his permission . . . has any right of action . . . unless the plaintiff in any such action establishes . . . the intoxication or willful misconduct of the driver." Answering the contention that the amendment was unconstitutional "in that it makes an arbitrary distinction between owners giving compensation for a ride and other persons, not owners, who give such compensation," the court stated on page 609: (1) that there was a presumption in favor of constitutionality; (2) that wide discretion was vested in the Legislature in making a classification, and the classification will be upheld by the courts unless it is " 'palpably arbitrary and beyond rational doubt erroneous.' " It was held the classification was not arbitrary. This holding that the statute with the amendment adding an additionally favored class is constitutional imports a finding of constitutionality before the addition; at least to the extent of the point covered—"equal protection."

Justice Peters dissented in the *Patton* case but in doing so made it clear (on p. 611) that he considered the original classification in the section proper. In so stating, Justice Peters referred to *Silver* v. *Silver*, 280 U.S. 117 [50 S.Ct. 57, 74 L.Ed. 221, 65 A.L.R. 939]. There the United States Supreme Court upheld the Connecticut guest law. Appellants here contend *Silver* did not consider the question of violation of "due process;" that only violation of "equal protection" was discussed. It is true that the Supreme Court did state its review was limited to the question considered by the Connecticut Supreme Court (equal protection) but it also said on page 942 (65 A.L.R.): ". . . We need not, therefore, elaborate the rule that the Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object. [Citations.]" It also held that being aware of the frequency of

litigation in which guests sued their drivers, seeking large sums, and of the evils of vexatious litigation, it could not assume that the "lower standard of care [to] be exacted" when motor vehicle operators carried guests was an improper subject of classification. The constitutionality of our guest law in its general aspect (i.e., as a protection to the unintoxicated unwilful host) was assumed but not discussed by our Supreme Court in *Emery* v. *Emery,* 45 Cal.2d 421, 432 [289 P.2d 218], and in *Weber* v. *Pinyan,* 9 Cal.2d 226, 229 [70 P.2d 183, 112 A.L.R. 407].

Cases on the constitutionality of automobile guest statutes are collected in an annotation following *Shea* v. *Olson,* 185 Wash. 143 [53 P.2d 615, 111 A.L.R. 998]. The Washington statute limited a guest's right of recovery to accidents which were intentional. The law was held to be a valid exercise of the state's police power and not in violation of due process. The annotation in 111 American Law Reports at page 1011 states:

"In order to prevent fraud and collusion between gratuitous guests in motor vehicles and their owners or operators, resulting in unjustly charging automobile liability insurers for injury or death of guests, statutes have been enacted in many states relieving in varying degrees the owner or operator from liability for injury or death. . . . Where these statutes do not wholly deny a gratuitous guest a right of action against the owner or operator of an automobile for an injury they are generally held constitutional. [Citations from 10 states included.]"

In California legislative alterations, modifications and even abrogations of unvested common law rights analogous to the guest law have consistently been upheld against attacks, whether on the grounds of violation of due process or of equal protection. A case in point is *Werner* v. *Southern Cal. etc. Newspapers,* 35 Cal.2d 121 [216 P.2d 825, 13 A.L.R.2d 252]. There the Legislature amended common law rules relating to libel and slander by conditioning the recovery of general damages in specified cases to instances where unavailing demands for retraction had been made. Arguments that the amendment violated due process and equal protection of the law were rejected by the court (per Justice Traynor) which held (p. 128) that the court could not invoke the due process clause to invalidate a legislative policy to abolish a right to recover general damages in the specified actions for defamation, where it could reasonably be said to prevent unfounded litigation with a danger of excessive recoveries; and (p. 129)

that the due process clause cannot be resorted to as an exercise of judicial censorship directed not to the constitutionality of legislation but to its wisdom; and (p. 131)—as regards the contention of denial of equal protection—that ''The discrimination or inequality produced, in order to conflict with the constitutional provisions, must be 'actually and palpably unreasonable and arbitrary' '' although ''differences of treatment under law should [not] be approved on classification because of differences unrelated to the legislative purpose.''

Cases upholding the validity of anti-heart-balm legislation are also in point. In fact that legislation may be said to represent the ultimate in the abolition of a common law right because, as enacted in California, it wipes out not only civil actions for seduction, criminal conversation, alienation of affections, and breach of promise of marriage (Civ. Code, § 43.5) but also actions for fraudulent promises to marry or cohabit after marriage (Civ. Code, § 43.4). And this latter section has by this court (in *Boyd* v. *Boyd,* 228 Cal.App.2d 374 [39 Cal.Rptr. 400]—hearing by Supreme Court denied) been construed to embrace fraudulent representations inducing a trusting bride-to-be to part with valuable pension rights, thus leaving her without any recourse for her loss. Our original anti-heart-balm statute (Civ. Code, § 43.5) adopted in 1939 was upheld in *Ikuta* v. *Ikuta,* 97 Cal.App.2d 787 [218 P.2d 854]. Although the contentions of invalidity there raised were based upon section 1 of article I of the California Constitution, the ''inalienable rights'' section, the answer of the court (per Presiding Justice Shinn) thereto is no less an answer to a charge of violation of Fourteenth Amendment due process. The opinion states (p. 789) that the constitutional rights guaranteed are ''not absolute but are 'circumscribed by the requirements of the public good' . . . [and] [l]ike the protection accorded to personal rights and privileges by the requirement of due process of law . . . cannot operate as a curtailment upon the basic power of the Legislature to enact reasonable police regulations.'' Civil Code section 43.5 was held to be a reasonable police regulation in that the type of litigation proscribed was a fruitful source ''of fraud and extortion because of the ease with which [it] may be employed to embarrass, harass, and besmirch the reputation of one wholly innocent of wrongdoing.'' (P. 789.)

In *Langdon* v. *Sayre,* 74 Cal.App.2d 41 [168 P.2d 57], it was held that the anti-heart-balm legislation did not violate

134

the California Constitution's "special laws" prohibitions (art. I, § 11; art. IV, § 25).

Similar anti-heart-balm legislation in New York has been upheld in *Fearon* v. *Treanor*, 272 N.Y. 268 [5 N.E.2d 815, 109 A.L.R. 1229] (appeal dismissed for want of substantial federal question—301 U.S. 667 [57 S.Ct. 933, 81 L.Ed. 1332]), and in *Hanfgarn* v. *Mark*, 274 N.Y. 22 [8 N.E.2d 47] (appeal dismissed for want of substantial federal question—302 U.S. 641 [58 S.Ct. 57, 82 L.Ed. 498]).

An earlier instance of "legislative overhauling and revision of common law tort rules"[1] is in our system of workmen's compensation laws, the constitutionality of which was upheld by our California Supreme Court in 1915 in *Western Indemnity Co.* v. *Pillsbury*, 170 Cal. 686 [151 P. 398]. There the court, although stating (p. 692) the legislation to be "radical, not to say revolutionary" in sweeping out of existence (in the covered field) questions of common law negligence, contributory negligence, assumption of risk, and the fellow-servant rule, held it did not violate either due process or equal protection. It considered it to be a proper exercise of the police power under the authority of *Munn* v. *Illinois*, 94 U.S. 113, 134 [24 L.Ed. 77, 87], which it quoted (p. 696) :

" 'A person has no property, no vested interest, in any rule of the common law. That is only one of the forms of municipal law, and is no more sacred than any other. Rights of property which have been created by the common law cannot be taken away without due process; but the law itself, as a rule of conduct, may be changed at the will . . . of the legislature, unless prevented by constitutional limitations. Indeed, the great office of statutes is to remedy defects in the common law as they are developed, and to adapt it to the changes of time and circumstances.' "

Appellants, aware, we are sure, of all of the authorities we cite in this opinion,[2] including the decisions of the California Supreme Court, do not attempt to distinguish them. We reach the conclusion, therefore, that effectually we are being asked to reexamine the position which not only this and other District Courts of Appeal but also the California Supreme Court have taken regarding this type of legislation; in fact this very statute. That is a large order and one which,

---

[1] We quote Professor Van Alstyne, 5 California Law Revision (1963) Sovereign Immunity Study, p. 517.

[2] *Patton* v. *La Bree*, *supra*; *Werner* v. *Southern Cal. etc. Newspapers*, *supra*; and *Munn* v. *Illinois*, *supra*, were cited in respondents' brief.

as regards the decisions of our Supreme Court, we are not at liberty to fill. Nor have we any desire to.

Appellants speak eloquently of human rights—the rights of man. Pragmatically, however, they are preoccupied with the rights of only one particular type of man—the plaintiff in a personal injury action. ''Man'' collectively has rights also. Living in society, man has delegated to his representatives, including courts and legislatures, the power to set up and apply rules so that all men (both plaintiffs and defendants) can live together in the same community. The process of making rules, whether common law or statutory, is a balancing process.

Effectually appellants would ''freeze'' common law principles. (As of when? Counsel does not explain.) But society is not static; it is fluid; it is also complex with the complexities modernly increasing (particularly in the matter of automobile traffic) in geometric progression. Therefore, the law, both statutory and common law, must keep pace. Hence the statutory changes in common law rules by the Legislature made as a matter of state policy to meet current needs and upheld by the courts as a proper exercise of the police power (within the limitations enunciated), all as discussed above, are not in violation of the human rights of free men; not violation of due process; not a denial of equal protection.

The judgment is affirmed.

Friedman, J., and Van Dyke, J.,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 9, 1964.

---

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.