[Civ. No. 42965. Second Dist., Div. One. Sept. 26, 1974.]

NELLIE CUMMINGS et al., Plaintiffs and Appellants, v.
WILLIAM G. MOREZ, as Special Administrator, etc., et al.,
Defendants and Respondents.

**COUNSEL**

Zajic & Kremser and Christopher J. Zajic for Plaintiffs and Appellants.

Tom Halde, Edward L. Lascher and Wendy Cole Wilner for Defendants and Respondents.

**OPINION**

**HANSON, J.—**

### INTRODUCTION

This is an appeal by plaintiffs from a judgment in favor of defendant William G. Morez, as special administrator of the estate of Percy Thornton, deceased, in a personal injury and wrongful death action arising out of a motor vehicle accident.

### THE CASE

On June 13, 1970, a vehicle, owned and operated by Percy Thornton and in which Nellie Cummings, Lois Campbell and Eller Smith were riding, struck a guardrail and ran practically head-on into a bridge abutment, killing the driver Thornton and occupants Campbell and Smith and injuring Cummings.

On June 11, 1971, Nellie Cummings and the heirs of Lois Campbell and Eller Smith filed a "Complaint for Wrongful Death and Personal Injuries" in the Superior Court of Santa Barbara County naming as defendants William G. Morez, as special administrator of the estate of Percy Thornton, deceased, who owned and operated the vehicle at the time of the accident. Also named as a defendant was Mid-Century Insurance Company, as a real party in interest, who it was alleged insured the deceased Thornton. Following the sustaining of a demurrer by defendant Mid-Century Insurance Company on the grounds of misjoinder of parties defendant and failure to state a cause of action, plaintiffs filed a first amended complaint on November 15, 1971, and a second amended complaint on September 29, 1972, deleting the insurance company as a defendant.

The second amended complaint alleged, in part, that the deceased driver Thornton "wilfully and intentionally operated said vehicle in a reckless and erratic manner at an excessive rate of speed, while under the influence of intoxicants. . . ." Plaintiff Cummings further alleged that she was a "passenger for compensation" and that Thornton's negligence proximately caused the accident and her injuries and damages.

In his answer to the second amended complaint filed October 26, 1972 in addition to certain general and specific denials, defendant Morez alleged that the occupants of the vehicle driven by the deceased Thornton "were guests of the said Percy Thornton in the said vehicle and pursuant to the provisions of section 17158 of the Vehicle Code, commonly known as the 'guest statute'," were barred from recovery. In addition the defendant

alleged that recovery was also barred on the theories of (1) a common and joint venture; (2) contributory negligence; and (3) assumption of risk.

During the six-day jury trial of the matter the following facts were testified to:

On Friday evening, June 12, 1970, plaintiff Nellie Cummings talked with her sister, Lois Campbell, about joining her sister and Percy Thornton in going fishing at Lake Cachuma on Saturday, June 13, 1970, and was told by Lois that Percy had said it was all right if they got "gas money" of $2.50 (being $1.25 each). Nellie gave $1.25 to Lois. There is no evidence that Percy ever received any money.

Early Saturday morning, Percy picked up Lois and then Nellie. Due to a change in his plans, they went to Lake San Antonio. Saturday was the first time Nellie met Percy. They fished until about 6 p.m. when they left to return to Santa Barbara. They had been joined by Eller Smith, a lady who had been driven to the lake by a Mr. Murphy. On the return trip, Lois sat in the front seat next to driver Thornton; in the back seat were Eller behind Lois and Nellie behind driver Thornton.

Their route was toward Lake Nacimiento. Until he reached the crest of a hill about a mile from the lake, Percy drove in a reasonable manner according to Nellie. There was a downhill winding road from the crest to the Nacimiento Bridge Dam. Upon cresting the hill, Percy started taking the curves "wide" and Nellie could hear the tires squeal as he rounded the curves. She was "scared to death" as likewise were Lois and Eller. Nellie told Percy to "watch out" on taking the curves; Eller told him to "recognize those curves"; Thornton told Nellie he knew what he was doing; he knew how to drive; and he wanted to get where he was going. Nellie told him to let her out, that she could get to Santa Barbara; he continued to squeal around the curves; Nellie again told him to let her out; they rounded another curve; and the last Nellie remembered was seeing "a black and white picket fence."

California Highway Patrol Officer Gouff testified that when he arrived, the vehicle was hanging out over the face of the dam with a cable wrapped around the underside and tied to a jeep, apparently to prevent the vehicle from falling down the face of the dam. The four occupants were still in the vehicle, three appearing to be dead and one alive. There were about 54 feet of skid marks to the point of impact which was about 18 feet from the abutment of the bridge. He testified: "[T]he skid marks tell me that the vehicle was traveling sideways and the front half of the vehicle struck the guard rail first. . . . Damage was all along the driver's side of the

vehicle, mostly to the front quarter and then as the vehicle came in contact with the bridge abutment, it was direct head-on, you might say. . . . The imprint of the bridge abutment, which was square, had pushed the front of the vehicle back eighteen or twenty inches, at least, and left a square indentation on the front of the vehicle."

The trial court refused to submit to the jury the question whether Nellie had become an "involuntary occupant" who was entitled to recover on the basis of ordinary negligence. The trial court on its own motion instructed that none of the plaintiffs could recover in the absence of establishing willful misconduct on the part of driver Thornton.

On December 20, 1972, the jury, by a nine to three vote returned its verdict in favor of defendant Morez and against all plaintiffs.

On January 22, 1973, plaintiffs' motion for a new trial was denied.

On February 2, 1973, plaintiffs' notice of appeal was filed.

*On February 20, 1973, eighteen (18) days after the plaintiffs filed their notice of appeal, the California Supreme Court rendered its decision in* Brown v. Merlo, *8 Cal.3d 855 [106 Cal.Rptr. 388, 506 P.2d 212].*[1]

## CONTENTIONS

On appeal plaintiffs contend: (1) that *Brown* v. *Merlo, supra,* is retroactive and applicable to pending appeals; (2) that they are entitled to rely upon *Brown* v. *Merlo, supra,* although unconstitutionality was not raised in the trial court; and (3) that the trial court committed prejudicial error (a) in rejecting evidence, and, as to Nellie Cummings, (b) in refusing to

---

[1] In *Brown* v. *Merlo, supra,* the accident occurred on October 15, 1967; the defendant and plaintiff were riding in a jeep operated by the defendant. "The jeep crossed the center line of the highway and collided with an embankment on the opposite side of the road; plaintiff sustained serious physical injuries to his head, body and limbs as a result of the accident." A summary judgment was granted in favor of defendant as to plaintiff's negligence count; "the cause of action for willful misconduct went to a jury which returned a verdict in defendant's favor." Plaintiff appealed from the summary judgment.

In reversing, the Supreme Court held that the provisions of Vehicle Code section 17158 were unconstitutional, stating at page 882: "In summary, we have concluded that the classifications which the guest statute creates between those denied and those permitted recovery for negligently inflicted injuries do not bear a substantial and rational relation to the statute's purposes of protecting the hospitality of the host-driver and of preventing collusive lawsuits. We therefore hold that, as applied to a negligently injured guest, the guest statute violates the equal protection guarantees of the California and United States Constitutions." The cause was remanded to the superior court with instructions to permit the plaintiff to proceed with his cause of action in negligence.

instruct on "involuntary occupant" principles, and (c) nonsuiting Nellie upon her second count which claimed her to have been a passenger for compensation.

Respondents argue (1) that *Brown* is not to be given a retroactive effect; (2) that since the appellants did not raise unconstitutionality in the trial court, it cannot be considered on appeal; and (3) that there was no prejudicial error committed during the trial.

## DISCUSSION

*Does Brown v. Merlo Have Retroactive Effect?*

Respondents at oral argument cited *Johnson* v. *Hassett* (N.D.) 217 N.W. 2d 771, in which the North Dakota Supreme Court declared unconstitutional the North Dakota automobile guest statute and on petition for rehearing (p. 780) cryptically directed its decision was to operate prospectively.

■ However, since the California Supreme Court in *Brown* v. *Merlo, supra,* did not speak to this issue and made no comment as to the retroactive or prospective application of its decision, we are compelled by reason of more persuasive case law to hold that *Brown* v. *Merlo, supra,* has retroactive application to the case at bench. The following cases point in the opposite direction of respondents' position:

FIRST: In the case of *Pahmer* v. *Hertz Corporation,* 32 N.Y.2d 119 [343 N.Y.S.2d 341, 296 N.E.2d 243], *California law governing,* the question was whether the defendants could rely upon the California "guest statute" as a defense when the automobile accident occurred in 1966 in California. Pending appeal, *Brown* v. *Merlo* was decided. The New York Court of Appeals, after quoting from *Brown,* held (343 N.Y.S.2d at p. 343): "Since, then, the California guest statute has been stricken as unconstitutional, it follows that it may not be relied upon in the case before us and that neither defendant may assert it as a defense to the complaint in this action." The New York Court of Appeals thus gave retroactive effect to *Brown.*

SECOND: The case of *Lightenburger* v. *Gordon,* 89 Nev. 226 [510 P.2d 865], involved an action for wrongful death arising from the crash of a private plane in California in December 1962 which resulted in the death of the pilot and a guest. *Trial was conducted on the basis of California law.* A first trial which resulted in verdict and judgment for defendants was reversed. A second trial likewise resulted in verdict and judgment for defendants. An appeal of the second trial was taken, briefed, orally

argued and submitted for decision when *Brown* v. *Merlo, supra,* was determined. The Nevada Supreme Court held that *Brown* was retroactive, requiring reversal of the judgment although the accident had taken place 10 years previously. Application for certiorari was denied by the United States Supreme Court. (*Gordon* v. *Lightenburger,* 414 U.S. 1039 [38 L.Ed. 2d 330, 94 S.Ct. 540.])

THIRD: We cannot ignore the analogies nor the holding in the California case of *Carlson* v. *Ross,* 271 Cal.App.2d 29 [76 Cal.Rptr. 209], which held that the California Supreme Court's decision in *Rowland* v. *Christian,* 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561], had retroactive application. We particularly note that respondents' petition for a hearing in *Carlson* v. *Ross* was denied by the California Supreme Court on May 21, 1969.

In *Carlson* v. *Ross, supra,* a plaintiff, a minor of the age of 12 years, appealed from a judgment after a jury verdict for defendants. The plaintiff, "a social licensee on defendants' home premises after dark, and while playing a game of tag with defendants' children," fell over defendants' bulldog and severely injured his hand when it came into contact with a broken, rough and jagged pipe which had been broken by one of the defendants and left in that condition for several years. The reviewing court reversed for the giving of instructions which, although in conformity with the decisions at the time the case was tried as to the duty of the owner of the premises to a licensee, were contrary to the holding of *Rowland* v. *Christian, supra.* *Rowland* abolished the landmark common law classifications or status of plaintiffs as an invitee, licensee or trespasser on the premises according to the circumstances of his presence and the duty of the landowner in respect thereto and held the proper test to be applied to the liability of the possessor of land is "whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others, . . ."

The court in *Carlson, supra,* said at page 32: "The instructions given in the instant case, which was tried before *Rowland,* reflect the common law approach that a licensor is under no duty to alter or repair the premises as they existed when the licensee entered. *Rowland,* however, abolishes these distinctions as between trespassers, licensees, and invitees and sets forth a new test. In the light of *Rowland,* the trial court erred in giving the instruction based on BAJI 212-B (licensees and licensors). On retrial the jury should be instructed according to the holding in *Rowland* v. *Christian, supra,* 69 Cal.2d 108."

Thus, in *Carlson* the *Rowland* decision, which abolished the classifications between trespassers, licensees and invitees as they existed at the time

*Carlson* was tried setting forth a new test, was held retroactive; a fortiori, we hold that the *Brown* decision, which abolished the guest statute classifications as they existed at the time the case at bench was tried, setting forth a new test, also operates retroactively.

FINALLY: In *County of Los Angeles* v. *Faus,* 48 Cal.2d 672, 680-681 [312 P.2d 680], it was held: ". . . It is the general rule that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation. . . . A well-recognized exception to this general rule is that, where a constitutional provision or statute has received a given construction by a court of last resort and contracts have been made or property rights acquired under and in accordance with its decision, such contracts will not be invalidated nor will vested rights acquired under the decision be impaired by a change of construction adopted in a subsequent decision. . . . Applying the foregoing principles to the facts in the instant case, it is apparent that it was tried by the trial judge and attorneys for both parties upon a theory of law heretofore announced by this court that we are now overruling. It is also evident that neither contract nor property rights have vested in either party by virtue of our previous decisions on the points here involved. Therefore, this case falls within the general rule set forth above and not within the exception." (See also *Beard* v. *Atchison, Topeka & Santa Fe Ry. Co.,* 4 Cal.App.3d 129, 135 [84 Cal.Rptr. 449].)

It is noted that in footnote 4 on page 863 of 8 Cal.3d, the Supreme Court in *Brown* stated in part: "This court has never directly passed on the equal protection question posed by plaintiff." It further is noted that that question and other constitutional questions had been passed upon by intermediate California appellate courts. (See, e.g., *Forsman* v. *Colton,* 136 Cal.App. 97, 102 [28 P.2d 429]; *Ferreira* v. *Barham,* 230 Cal.App.2d 128 [40 Cal. Rptr. 739]; *Stephan* v. *Proctor,* 235 Cal.App.2d 228, 231 [45 Cal.Rptr. 124].) Thus, *Brown* was the first time the Supreme Court passed upon the question and it was not overruling any of its own prior decisions. It declared the guest statute to violate the equal protection guarantees of the California and United States Constitutions. A statute which violates either Constitution is to that extent void and, "[i]n legal contemplation, a void act is as inoperative as though it had never been passed. . . ." (13 Cal.Jur.3d, Constitutional Law, § 81, pp. 148-149; see also *Brandenstein* v. *Hoke,* 101 Cal. 131, 134-135 [35 P. 562].)

Respondents' argument that insurance companies had relied upon the validity of the "guest statute" and that it would be unjust to insurers to give retroactive application to *Brown* v. *Merlo, supra,* must give way to the fact that we are herein dealing with plaintiffs' rights as against the

representative of the deceased driver, Thornton, and the latter's civil liability, if any, exists regardless of whether he is or is not insured. The presence or absence of insurance is not a factor in determining that civil liability.

Accordingly, in the case at bench we hold that the general rule applies and that *Brown* v. *Merlo, supra,* has retroactive application, there being no exception, no vested rights having attached to any of the parties to the action.

### Can Appellants Rely on Brown v. Merlo on Appeal, Having Not Raised the Unconstitutionality of Section 17158 in the Trial Court?

Generally, but not always, it is required that the claim of unconstitutionality be raised at the first opportunity. Before taking their appeal, decisional law was adverse to appellants. Clearly, had appellants raised the question in the trial court, their urging necessarily would have been ruled against since the trial court was bound to accept and apply the law as it then existed under intermediate appellate court decisions. ■ We hold the appellants have raised the question at the first opportunity, following decision in *Brown* v. *Merlo,* by their opening brief in this appeal.

An analogous situation confronted the United States Supreme Court in *Curtis Publishing Co.* v. *Butts,* 388 U.S. 130 [18 L.Ed.2d 1094, 87 S.Ct. 1975]. In *Curtis Publishing Co.*[2] the court held that the mere failure to interpose a constitutional defense prior to the announcement of a decision which might support it cannot prevent a litigant from later invoking such a ground. The court said at page 143 [18 L.Ed.2d at p. 1104]: "Of course it is equally clear that even constitutional objections may be waived by a failure to raise them at a proper time, *Michel* v. *Louisiana, supra,* at 99, but an effective waiver must, as was said in *Johnson* v. *Zerbst,* 304 U.S. 458, 464, be one of a 'known right or privilege.' "

In the case at bench we hold that the appellants had not waived a "known right" before they became aware of the California Supreme Court's decision in *Brown* v. *Merlo* and thereafter timely raised the issue in their opening brief on appeal.

In view of the foregoing and since on retrial the jury should be instructed according to the holding in *Brown* v. *Merlo, supra,* it is unnecessary to

---

[2]That decision first was mentioned in a supplemental brief filed with permission by appellants. A response filed by respondents argues that it presents a new point for the first time. Actually, it is simply additional authority supportive of appellants' arguments set forth in their opening and reply briefs. But even if this were not so, it is the function of this court to see that justice and law properly are applied and we could utilize the decision on our own motion.

consider the other arguments advanced by the parties. In view of the determination made in *Brown* that recovery may be based on ordinary negligence, the distinctions between "guest," "passenger for compensation," "involuntary passenger," and the like, have become moot.

It is also unnecessary for us to consider appellants' argument that the trial court erred in rejecting evidence in the form of a motion picture taken from the air of the roadway since, on retrial, the trial court may exercise its discretion in favor of admitting the evidence.[3]

The judgment in favor of Mid-Century Insurance Company is affirmed without costs to either party.[4] The judgment in favor of William G. Morez, as special administrator of the estate of Percy Thornton, deceased, is reversed with costs on appeal to be recovered by the appellants.

Lillie, Acting P. J., and Thompson, J., concurred.

The petition of respondent Morez for a hearing by the Supreme Court was denied November 21, 1974. Clark, J., was of the opinion that the petition should be granted.

---

[3]According to the trial court, this picture was excluded in an exercise of discretion as tending to be misleading. (Evid. Code, § 352.)

[4]Although Mid-Century Insurance Company was named as a defendant in the caption and various counts of the original complaint, demurrer was sustained and the insurance company was omitted as a defendant in the caption and body of plaintiffs' subsequent amended complaints, thereby working a discontinuance of the action as to it. (*Browner* v. *Davis*, 15 Cal. 9, 11-12; *Brittan* v. *Oakland Bank of Savings*, 112 Cal. 1 [44 P. 339].) The jury trial proceeded solely against defendant special administrator and the jury's verdicts were in favor of "defendant" against the respective plaintiffs. However, the judgment on the verdict as entered by the clerk was in favor of the special administrator and Mid-Century Insurance Company. The appeal as filed is from the judgment entered "in favor of Defendants and against Plaintiffs, and from the whole and every part of said judgment." No mention or contention is made in any of the briefs regarding Mid-Century Insurance Company. Accordingly, we deem the appeal to have been abandoned as to said defendant insurance company. (*Munger* v. *Moore*, 11 Cal.App.3d 1, 5, fn. 1 [89 Cal.Rptr. 323]; *White* v. *Shultis*, 177 Cal.App.2d 641, 648 [2 Cal.Rptr. 414].)