**Duane HAUG and Oscar Haug, Appellants,**

v.

**Edward M. GRIMM, a minor, by Albert E. Grimm, his guardian ad litem, and Albert E. Grimm, individually, Appellees.**

**No. 15818.**

United States Court of Appeals Eighth Circuit.

Jan. 17, 1958.

**524**

Quentin N. Burdick, Fargo, N. D., for appellants.

Mart R. Vogel and Jon N. Vogel, Fargo, N. D. (Wattam, Vogel, Vogel, Bright & Peterson, Fargo, N. D., were with them on the brief), for appellees.

Before SANBORN, JOHNSEN and VAN OOSTERHOUT, Circuit Judges.

SANBORN, Circuit Judge.

This appeal is from a judgment against the defendants (appellants) in a personal injury case resulting from an automobile accident which occurred in the evening of May 25, 1953, near Harwood, Cass County, North Dakota, on U. S. Highway 81. Edward M. Grimm, the 19-year-old son of Albert E. Grimm, was injured. Duane Haug was driving the automobile with the consent of his father, Oscar Haug, who owned the car. It was a family-purpose automobile. Edward Grimm and Milo Lew Rustan were with Duane in the car at his invitation. In passing another car, while on the way from Grand Forks to Fargo, Duane lost control of the Haug car, and it rolled over. The Grimms are citizens of Minnesota, and the Haugs citizens of North Dakota.

Albert E. Grimm, the father and guardian ad litem of Edward, brought this action for damages on July 28, 1954, on behalf of his son and on his own behalf against Duane Haug and his father, Oscar Haug, upon the claim that the accident and Edward Grimm's injuries, alleged to have been serious and permanent, were caused by the gross negligence of Duane Haug in driving at a dangerous rate of speed and in failing to keep control of the car.[1]

---

1. The applicable "Guest Law" of North Dakota, Chapter 39–15, North Dakota Revised Code of 1943, so far as pertinent provides:

"39–1501. *'Guest' Defined.* 'Guest' shall mean and include a person who accepts a ride in any vehicle without giving compensation therefor.

"39–1502. *Liability for Injury to or Death of Guests.* Any person who as a guest accepts a ride in any vehicle moving upon any of the public highways of this state, and who while so riding as such guest receives or sustains an injury, shall have no right of recovery against the owner or driver or person responsible for the operation of such vehicle. * *

"39–1503. *Driver of Motor Vehicle Liable for Injury or Death When.* The provisions of this chapter shall not be construed as relieving the owner, driver, or person responsible for the operation of a vehicle from liability for injury to or death of a guest proximately resulting from the intoxication, willful misconduct, or gross negligence of such owner, driver, or person responsible for the operation of such vehicle. In any action for death or for injury or damage to person or property by or on behalf of a guest

In their complaint the plaintiffs alleged that Albert Grimm had expended approximately $1,200 for medical and hospital treatment required by his son Edward because of his injuries, and would have to expend about $1,000 more for his further treatment.

The following is the plaintiffs' concluding allegation and prayer for relief:

"Because of the injuries as aforesaid and the pain and suffering both in body and mind already suffered and the pain and anguish which he will continue to suffer the plaintiff, Edward M. Grimm, has been damaged in the sum of $35,000.00.

"Wherefore, plaintiffs pray for judgment against the defendants as follows:

"1. for Albert E. Grimm individually the sum of $2,200.00.

"2. for Edward M. Grimm, a minor, by Albert E. Grimm, his guardian ad litem, the sum of $35,000.00.

"3. for costs and disbursements."

The defendants in their amended answer denied that Duane Haug was negligent, and alleged that Edward Grimm was guilty of contributory negligence, and that the plaintiffs' damages were overstated.

The case was tried to a jury in February, 1957. At the close of the evidence the court denied a motion of the defendants for a directed verdict. The jury returned a verdict for the plaintiffs, awarding them damages against the defendants "in the sum of $500.00 for the plaintiff, Edward M. Grimm, and $1,260.15 for the plaintiff, Albert E. Grimm."

The defendants moved for judgment notwithstanding the verdict or in the alternative for a new trial. The plaintiff Edward M. Grimm, who by the time of the trial was 23 years of age, moved that the verdict in his favor be set aside and that a new trial be granted him because of the inadequacy of the award.

The court denied the motion of the defendants, and granted Edward Grimm a new trial on the issue of damages only, setting aside so much of the judgment entered on the verdict as awarded him $500.00.

The defendants seek a reversal of the judgment appealed from. They ask that this Court direct the entry of a judgment in their favor or order a new trial because of the following alleged errors of the District Court:

1. Permitting a witness to give his opinion as to the speed of the Haug car at the time of the accident, based on tire marks alone.

2. Denying a motion for a mistrial for alleged misconduct of plaintiffs' counsel in argument to the jury.

3. Denying a requested instruction defining gross negligence, and giving an erroneous definition.

4. Giving an instruction permitting the jury to find that Edward Grimm was not a guest.

5. Denying the defendants' motion for a directed verdict made at the close of the evidence, and their motion, after verdict, for judgment notwithstanding or in the alternative for a new trial.

6. Granting the motion of Edward Grimm for a new trial on the issue of damages only.

### 1.

The witness Charles Young Punton, Sheriff of Cass County, North Dakota, who had had fifteen years experience as a highway patrolman in the investigation of automobile accidents, testified that he investigated the accident in suit, shortly after it occurred; that the weather was clear and the pavement dry; that he saw tire marks across the highway, to the east side of the pavement, showing that a car struck a soft spot on the east shoulder of the highway; that the car went on the soft shoulder for a considerable distance, and then angled across the highway again; that the marks led to

or the estate, heirs, or legal representatives of such guest, the burden shall be upon the plaintiff to establish that such

intoxication, willful misconduct, or gross negligence was the proximate cause of such death, injury, or damage."

the Haug car, "which was sitting in the west side of the road"; and that the distance the tracks extended was 435 feet. The witness was then asked whether he had an opinion as to the speed of the Haug car at the time of the accident. To lay a foundation for an objection, Punton was asked by counsel for the defendants if he knew whether the brakes of the Haug car were on at the time the tire marks were made. He said, "I do not." He said, however, that he had an opinion as to the speed of the car. Defendants' counsel objected to the witness giving his opinion, as being without foundation, since the witness did not know whether the tire marks were made with the brakes set or not. The court overruled the objection, and the witness said: "I would estimate at least 75 miles per hour." The witness then was permitted to testify, over objection, to the braking distance within which a car traveling at varying speeds could be stopped.

▮ We think that the foundation for Punton's expert opinion as to the speed of the car at the time of the accident was obviously inadequate and his testimony about braking distances incompetent, since there was no basis for an assumption that Duane Haug had applied the brakes, and nowhere in the record was there any evidence that they had been applied before the car came to rest. The objections of the defendants to the opinion evidence of Punton, we think, should have been sustained. Whether the error in admitting the evidence would, standing alone, warrant a reversal of the judgment appealed from, we need not decide.

**2.**

▮ We cannot review the alleged misconduct of plaintiffs' counsel in argument to the jury, since the record does not contain the closing jury arguments of counsel on both sides. See London Guarantee & Accident Co. v. Woelfle, 8 Cir., 83 F.2d 325, 344, and Illinois Terminal R. Co. v. Friedman, 8 Cir., 210 F.2d 229, 231.

**3.**

▮ The defendants requested the following instruction on gross negligence:

"Gross negligence is, to all intents and purposes, no care at all. It is the omission of care which the most inattentive and thoughtless seldom fail to take of their own concerns. It evinces a reckless temperament. It is a lack of care which is practically wilful in its nature. It is the absence of even slight care."

The court's instruction to the jury was as follows:

"Defining gross negligence is not easy. I charge you that it is something between ordinary negligence and reckless conduct. Gross negligence falls short of a reckless disregard of consequences and differs from ordinary negligence only in degree, and not in kind. So far as it has any generally accepted meaning, it is merely an extreme departure from the ordinary standard of care."

The defendants' requested instruction was in exact accord with the State Supreme Court's definition of gross negligence within the meaning of the Guest Statute. Norgart v. Hoselton, 77 N.D. 1, 8, 39 N.W.2d 427, 431 and cases cited. The trial court's definition was not the Supreme Court's definition nor its equivalent. The defendants were entitled to the State Supreme Court's definition, and the failure to give the requested instruction was prejudicial error.

**4.**

▮ In our opinion, the issue whether Edward Grimm was riding as a guest in the Haug car was not an issue of fact for the jury, and the instruction of the court permitting the jury to find that he was not a guest was therefore erroneous.

The record shows that the occupants of the Haug car at the time of the accident were Duane Haug, Edward Grimm, and Milo Lew Rustan, all sitting in the front seat of the car, with Duane at the wheel and Edward "on the outside"; that Duane and Milo had in the afternoon of

May 25, 1953, driven from Edinburg, North Dakota, to Grand Forks, North Dakota, and to the University of North Dakota campus, where they met Edward Grimm at about 4:30 P.M.; that shortly thereafter they drove together downtown to the Belmont Bar and had some beer; that they then went to the Riviera Bar and had some more beer; that they then decided to go to Fargo, North Dakota; that Milo and Edward were to pay for the gas when they returned to Grand Forks, and other expenses of the trip to Fargo were to be shared equally; that, before leaving Grand Forks at about 7:00 P.M., Edward went to the Belmont Bar and "picked up a six can pack of beer"; that the purpose of the trip to Fargo was "to get dates with some girls"; that Edward was "supposed to line up girls" for the three boys; and that they consumed more beer on the way south toward Fargo. According to the testimony of Duane Haug and Milo Rustan, it was while passing a south-bound car and turning abruptly to avoid an oncoming car that Duane lost control of the Haug automobile, resulting in the accident and the injuries to Edward.

We think the evidence conclusively shows that the Haug car was being used only for social purposes during the late afternoon and evening of May 25, 1953, and that Edward Grimm and Milo Rustan were Duane's guests within the meaning of the applicable North Dakota guest statute. The fact that Edward was to "line up" girls in Fargo for his companions and to share expenses of the trip would not, in our judgment, make him other than a guest. Cf. Ortman v. Smith, 8 Cir., 198 F.2d 123, 125. Whatever benefits were to accrue to the driver of the car from Edward Grimm were purely social in nature.

5.

Whether, under North Dakota law, the defendants were entitled to a directed verdict or to judgment notwithstanding the verdict is, perhaps, a doubtful question. Had the trial court ruled that the evidence was insufficient, under North Dakota law, to take the case to the jury, and had the court directed a verdict for the defendants on that ground, it is at least probable that a judgment entered for the defendants on a directed verdict would have been sustained on appeal. See and compare, Russell v. Turner, 8 Cir., 148 F.2d 562. That case involved the guest statute of Iowa, I.C.A. § 321.-494 and is much like this case, the only substantial difference being that here there was evidence that on June 1, 1953, Duane Haug entered a plea of guilty to aggravated reckless driving, a charge growing out of the accident in suit. That, being in the nature of an admission, was perhaps some evidence in support of the plaintiffs' claim of actionable gross negligence on the part of Duane, and conceivably may have justified the trial court in refusing to direct a verdict for defendants or to grant judgment notwithstanding the verdict. We find no other competent evidence in the record to sustain the claim that the accident was due to the gross negligence, under North Dakota law, of Duane Haug in the operation of the car. Edward Grimm himself testified: "We sat in the car, drank beer and chatted a bit as we were driving along the road. I don't remember Duane passing a car. I must have been dozing before the accident. Duane was driving properly all the time that I remember. I did not ask him to slow down, nor did I ever ask him to keep on his side of the road. I did not ask to get out of the vehicle at any time. There was nothing wrong with his driving during that period."

6.

There is no doubt that a United States District Court may in a case such as this, when the issue of liability has been properly tried and properly submitted to and determined by a jury, grant a new trial limited to the issue of damages. May Department Stores Co. v. Bell, 8 Cir., 61 F.2d 830, 842–843 and cases cited; Washington Gas Light Co. v. Connolly, 94 U.S.App.D.C. 156, 214 F.2d 254, 256 and cases cited. That, however, should not be done where there

is good reason to believe that the inadequacy of the damages awarded was induced by unsatisfactory proof of liability and was a compromise. It is unnecessary to discuss the question further, since the issue of liability was not, in our opinion, correctly tried nor correctly submitted to the jury.

The judgment appealed from is reversed, and the case is remanded with directions to grant the defendants a complete new trial on the merits as to all issues.