Hector **WALLEGHAM, First National Bank in Grand Forks, as Executor of the Estate of Arthur Flecton, deceased, Howard Bellamy, Howard Tisdale, Melvin Juhl, John Stellon, Marcus Stellon, Alex Peil, Don Halcrow, John Halcrow, Fern Christenson and Oscar Unke, Appellants,**

v.

Edward **THOMPSON, Robert Howell, and Leo Laxdahl, as the duly appointed, qualified and acting Commissioners of the Water Management Board of Pembina County, North Dakota, Respondents.**

Herman **SELLHEIM, Anton Hartje, John Unke, Arthur Puppe, Bernard Unke, Edward Redman, Ernest Boru, Byron Busse, and Oscar Unke, Appellants,**

v.

Edward **THOMPSON, Robert Howell and Leo Laxdahl, as the duly appointed, qualified and acting Commissioners of the Water Management Board of Pembina County, North Dakota, Respondents.**

Civ. Nos. 8659, 8660.

Supreme Court of North Dakota.

April 8, 1971.

Stokes, Vaaler, Gillig, Warcup & Woutat, Grand Forks, for appellants.

DePuy, Fair & O'Connor, Grafton, for respondents.

COYNE, District Judge.

These two cases based upon the same facts and involving the same issues of law were consolidated by the trial court and will be considered here without differentiation.

On March 23, 1966, a petition for the establishment of a drain was filed with the Pembina County Water Management Board, whose commissioners are the respondents herein. The appellants are landowners within the district who opposed the establishment of the drain. The trial court hearing the appeal from the order establishing the drain upheld the Water Management Board.

The cases are before this Court upon four specifications of error:

"1. The Court erred in its conclusion of law No. 4 when it concluded:

'That the Board of Commissioners of Pembina County Water Management District had jurisdiction to receive the Petition to establish such proposed Drain No. 66 and to conduct proceedings for its establishment; and that the order establishing drain was and is valid and in full force and effect.'

"2. The Court erred in its conclusion of law No. 5 where the Court concluded:

'That delivery of the Notice of Hearing to the newspaper prior to the date of the meeting held April 28, 1966, did not prejudice the rights of the Appellants.'

"3. That the Court erred in its conclusion of law No. 6 where the Court concluded:

'That the voting provisions of Section 61–21–16 of the North Dakota Century Code are constitutional and not violative with Sections 11 and 20 of the North Dakota State Constitution.'

"4. The Court erred in dismissing the Appellant's Appeal from the order establishing drain No. 66, which order establishing drain was entered on May 27, 1966, appeal from which was duly taken by the Appellants herein."

■ By their first specification of error appellants question the jurisdiction of the Water Management Board, pointing out that the proposed new drain would superimpose two existing drains duly established and constructed by the Pembina County Board of Drainage Commissioners pursuant to Chapter 61–21, N.D.C.C.

Appellants call our attention to the following statutes:

61–21–56, N.D.C.C. *"Dissolution of drainage district—Return of unexpended assessments.*—The owners of property subject to fifty-one per cent or more of the liability for maintaining any drain as determined in section 61–21–16 may petition the board for the abandonment and dissolution of such drain. Upon receipt of such petition, the board shall call a public hearing on the petition and if they find the number of valid signatures to represent property liable to fifty-one per cent or more of the cost of upkeep of such drain, as determined by section 61–21–16, and that such drainage district has no outstanding indebtedness, the board shall then declare such drain to be abandoned and such drainage district to be dissolved, shall record such declaration upon the minutes and publish the same in a newspaper having wide circulation in that county, and shall re-

turn all unexpended assessments collected for the maintenance of the drain to the owners of the assessed property on a pro rata basis in proportion with the amount originally assessed. In case the drainage district extends into two or more counties, the board upon receipt of the petition above referred to shall convene in joint session and call the public meeting above provided. When a drain has been abandoned and dissolved, it may then be re-established in whole or in part only in the same way as a new drain is established."

61–21–65, N.D.C.C., 1967 Pocket Supplement (N.D. Session Laws 1963, Chapter 421, § 20). *"Consolidation of drainage district or districts into water management districts.*—Upon resolution of the board of county commissioners or the board of drainage commissioners, or upon the filing with the board of county commissioners of a petition containing the signatures of landowners possessing at least fifteen percent of the voting rights in one or more drainage districts, computed in accordance with section 61–21–16, the board of county commissioners shall set a date for hearing upon the establishment or expansion of a water management district to include the property contained within such drainage district or districts. The board of county commissioners shall publish notice of the time, place, and purpose of such hearing once, in a newspaper of general circulation in the county not less than ten nor more than twenty days before the date set for hearing, and shall mail notice of such meeting by ordinary mail to each landowner within each drainage district affected at his address as shown by records in the office of the register of deeds or county treasurer. An affidavit of mailing shall be filed with the record of proceedings of the board of county commissioners. If, at the time and place set for hearing, a majority of affected landowners computed in accordance with section 61–21–16 shall file written objections,

further proceedings shall be discontinued. If such majority does not object, the board of county commissioners shall file with the state water commission the petition provided for in section 61–16–02 and all further proceedings shall thereafter be governed by chapter 61–16. Upon the establishment or expansion of a water management district to include one or more drainage districts the board of county commissioners shall, by resolution, dissolve the drainage districts and transfer all property of the dissolved districts to the water management district."

The petition for the establishment of the proposed new drain was filed with the Water Management Board, and the drain was established by the Water Management Board, without any proceedings having been had for the dissolution of the two existing drainage districts nor for the consolidation of the existing districts into a water management district.

The Pembina County Board of Drainage Commissioners has power to construct, repair, maintain, and improve drainage ditches.

61–21–02. N.D.C.C. *"Watercourses, ditches and drains may be constructed, maintained, repaired, improved, or extended.*—Watercourses, ditches, drains, and improvements thereto for the drainage of sloughs and other low lands may be surveyed and investigated and established, constructed, maintained, repaired, improved, and cleaned out in the several counties of this state under the provisions of this chapter wherever the same shall be conducive to the public health, convenience, or welfare. The powers conferred by this chapter and this section shall extend to and include but shall not be limited to:

"1. The deepening and widening or any necessary improvement of drains which have been or hereafter may be constructed;

"2. The straightening, clearing, or cleaning out and deepening of channels

of creeks, streams, and rivers, and the construction, maintenance, remodeling, repairing, and extension of levees, dikes, and barriers for the purpose of drainage;

"3. The location or extension of any drain if such location or extension is necessary to provide a suitable outlet or reasonably drain lands within a practical drainage area of such drains;

"4. The establishment, in whole or in part, of a drain and the completion of the same on the line of an abandoned or invalid drain; and

"5. The establishment and construction of lateral drains with outlets in drains already constructed."

61–21–05, N.D.C.C. *Powers of board.* —The board shall have all powers provided in section 61–21–02 and elsewhere in this chapter, except as specifically limited by this chapter. A drain commissioner may administer any oath required in any proceeding had before the board or in which such member may be called to act officially. The board of drain commissioners of any county may make rules and regulations on the subject of drainage within such county as it may deem proper, not inconsistent with the provisions of this chapter, including regulations in regard to clearing out and keeping clear the channels of streams and the construction and maintenance of dams thereon. Such regulations shall have reference to the capacity of such streams for drainage and may require the owners of dams to perform reasonable service in cleaning and keeping such streams clear, as consideration for the right to erect dams thereon."

The Pembina County Water Management Board has "all of the powers conferred by statutes upon a board of county drain commissioners". § 61–16–11, N.D.C.C.

While it is true, as argued by appellants, that the drainage board had jurisdiction of the two existing drains (§ 61–21–42, N.D.C.C.; Chester v. Einarson, 76 N.D. 205, 34 N.W.2d 418), it is our opinion that proceedings for the dissolution of the two existing districts into a water management district are not a prerequisite to the establishment of a new superimposing drain by the Water Management Board. Proceedings for dissolution or consolidation will presumably follow in due course. It is noted that at all meetings involving the proposed new drain, the Water Management Board and the Board of Drainage Commissioners met together, and the record reveals no conflict nor disagreement between them. Both are served by the same clerk. We are in agreement with the following statement by the trial court:

"It would be an unreasonable interpretation of the law that would defeat the more encompassing jurisdiction of the respondent water management board merely because its improvement or project, either partially or entirely, traverses two already existing drains established by a county drainage board. These facts did not serve to preclude the respondent board from here acting as it did on the greater watershed problems by establishing Drain #66."

Section 61–16–16, N.D.C.C., expresses the legislative recognition of the public interest in construction of water control works:

61–16–16, N.D.C.C. *"Commission and board of commissioners shall encourage construction of dams and other water control devices.*—The commission and the board of commissioners shall encourage the construction of dams and other water control works within the district by federal and state agencies, private individuals, and public and private corporations, and shall lend their aid, counsel, and assistance to any such project. All dams and other works, whether constructed by public authorities or private persons, unless specifically exempted therefrom, shall be subject to all of the provisions of this chapter."

Such direction by the legislature should not be unnecessarily thwarted.

■ Appellants' second specification of error finds fault with the action of the respondents in preparing a notice of hearing, delivering the notice to the official newspaper, which printed the same, all prior to the official action of the board setting the time for the hearing. The record does not disclose that any prejudice resulted therefrom. We therefore find no merit in this specification of error. We consider this slight departure from the customary procedure to be immaterial. Chester v. Einarson, *supra*.

By their third specification of error, appellants zero in on § 61–21–16, N.D.C.C.

61–21–16, N.D.C.C. *"Voting right or power of landowners.*—In order that there may be a fair relation between the amount of liability for assessments and the power of objecting to the establishment of a proposed drain, the voice or vote of affected landowners on the question of establishing the drain shall be arrived at in the following manner:

The landowner or landowners of tracts of land affected by the drain shall have one vote for each dollar of assessment that his land is subject to or one vote for each dollar of the assessed valuation of land condemned for the drain, as estimated by the board under the provisions of section 61–21–12. It is the intent of this subsection to allow one vote for each dollar of assessment, regardless of the number of owners of such tract of land. Where more than one owner of such land exists, the votes shall be prorated among them in accordance with each owner's interest.

A written power of attorney shall authorize an agent to cast the votes of any affected landowners."

This statute, say the appellants, violates §§ 11 and 20 of the Constitution of the State of North Dakota and is constitutionally infirm because it violates the "one man, one vote" rule established by the United States Supreme Court.

■ Weighted voting is not invalid per se. The Court of Appeals of the Fourth District of California has upheld a statutory apportionment of voting rights for election of members of a board of trustees of an irrigation district in proportion to the assessed value of the landowners' property within the district. Schindler v. Palo Verde Irrigation District, 1 Cal.App.3d 831, 82 Cal.Rptr. 61 (1969). Plaintiff contended that the California statute discriminated against small landowners and, therefore, violated the "one man, one vote" doctrine. The California Court held that the statutory voting formula is sustainable by reason of the promotion and protection of a "compelling state interest", following a constitutional standard suggested by the United States Supreme Court in Kramer v. Union Free School District, 395 U.S. 621, 89 S. Ct. 1886, 23 L.Ed.2d 583. We have no hesitation in concluding that the construction of water control devices in that part of this state which is susceptible to periodic flooding is a "compelling state interest".

. While the doctrine of "one man, one vote" first enunciated in Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663, has been extended beyond elections involving seats in a legislature, it is our opinion that we cannot further extend the doctrine to cover the cases involved herein. It is our opinion that § 61–21–16, N.D.C.C., is not invidiously discriminatory—it is not in violation of the Equal Protection Clause of the Fourteenth Amendment. The statutory formula for voting rights in proportion to the anticipated assessment that land in the drainage district may be subjected to distributes voting influence fairly among the landowners. Those landowners who own more land will be burdened more and have more at stake.

■ In State v. Gamble Skogmo, Inc., 144 N.W.2d 749, 752 (N.D.1966), in paragraph 1 of the syllabus, we said:

"The Fourteenth Amendment to the United States Constitution permits the states a wide scope of discretion in enacting laws which affect some groups of citizens differently than they affect others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective."

We cannot say that the voting formula enacted by the legislature is wholly irrelevant to the achievement of the State's objective. Indeed, we are of the opinion that it is entirely relevant.

■■ In State v. Gamble Skogmo, Inc., *supra*, we also said that a statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it; and that only invidious discrimination is prohibited by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

The statutory voting formula can be reasonably justified, and if it is discriminatory it is not invidious. It stands upon reason. It is not arbitrary.

For reasons set forth in this opinion, the judgments of the trial court are affirmed.

PER CURIAM.

The Honorable Justice Ralph J. Erickstad deemed himself disqualified and did not participate; the Honorable Eugene E. Coyne, District Judge in and for the Fifth Judicial District, sat in his stead. The foregoing opinion was prepared by Judge Coyne before his death. It is adopted by the undersigned as the opinion of this court.

STRUTZ, C. J., and TEIGEN, KNUDSON and PAULSON, JJ., concur.