Ronald W. JOHNSON and Lee Hassett,
Plaintiffs and Appellees,

v.

Byron HASSETT, Defendant and
Appellant.

Civ. No. 8968.

Supreme Court of North Dakota.

March 29, 1974.

As Amended April 11, 1974.

On Rehearing May 2, 1974.

Rehearing Denied May 24, 1974.

Lewis C. Jorgenson, Devils Lake, for plaintiffs and appellees.

John M. Olson, Sp. Asst. Atty. Gen., Bismarck, for defendant and appellant.

VOGEL, Judge.

The North Dakota Guest Law, Chapter 39–15, North Dakota Century Code, provides that a "guest," defined as a person who accepts a ride in any vehicle without giving compensation therefor, cannot recover for damages caused by the ordinary negligence of his host. He can recover only if he can prove that his injuries and damages were caused by "the intoxication, willful misconduct, or gross negligence" of the owner, driver, or other person responsible for the operation of the vehicle. The statute applies only to injuries occurring upon the public highways.

The plaintiffs here, severely injured in a one-car accident which they admit was caused by only the ordinary negligence of the driver of the car, the defendant, challenged the constitutionality of the guest law in the trial court. The court nevertheless instructed the jury on the guest law, and submitted to the jury the question of whether the plaintiffs were guests (since there was testimony that they had paid for some gas, to the extent of about five dollars for the 300-mile trip). The court accepted the verdict by the jury in favor of the plaintiffs. Upon consideration of a motion for judgment notwithstanding the verdict, the trial court ruled, first, that payment for the gas on a social trip did not take the plaintiffs out of the guest statute [citing dictum in Ledford v. Klein, 87 N.W.2d 345 (N.D.1958), and the opinion in Haug v. Grimm, 251 F.2d 523 (CA8 1958), construing North Dakota law] and, second, that the plaintiffs nevertheless were entitled to recover for ordinary negligence, since the guest statute is unconstitutional. We reach only the second point, constitutionality of the guest law, which is decisive of the appeal.

## HISTORICAL BACKGROUND

North Dakota's guest law was adopted in 1931. About half the States have such

laws, which differ in language and interpretation to the extent that one authority states flatly that "there are as many different guest laws as there are acts." Prosser, Torts, 4th Ed., p. 187. The statutes were passed in the 1920s and 1930s [Harper & James, The Law of Torts, Sec. 16.-15], and are "the result of persistent and effective lobbying on the part of liability insurance companies [Prosser, op. cit., p. 187]." No State has adopted a guest law since 1939 [Harper & James, op. cit., n. 4; Brown v. Merlo, 8 Cal.3d 855, 106 Cal. Rptr. 388, 506 P.2d 212 (1973) ]. A few States—including Connecticut, which passed the first such statute—have repealed their guest laws. Recently, California declared its guest law unconstitutional, in Brown v. Merlo, *supra*. Wisconsin, which had a similar rule by judicial interpretation, abolished it the same way [McConville v. State Farm Automobile Insurance Co., 15 Wis.2d 374, 113 N.W.2d 14 (1962); and see Bielski v. Schulze, 16 Wis.2d 1, 114 N.W.2d 105 (1962) ], while Massachusetts repealed its court-made rule by legislation [Mass.Gen.Laws Ann., chap. 231, Sec. 85L (Supp.1973)].

The constitutionality of such statutes has been before the courts a number of times. The first guest law, passed in Connecticut, was held constitutional by the State court in Silver v. Silver, 108 Conn. 371, 143 A. 240 (1928), and by the United States Supreme Court in Silver v. Silver, 280 U.S. 117, 50 S.Ct. 57, 74 L.Ed. 221 (1929).

Subsequently, the constitutionality of various State guest laws was upheld in about a dozen States. Naudzius v. Lahr, 253 Mich. 216, 234 N.W. 581, 74 A.L.R. 1189 (1931); Perozzi v. Ganiere, 149 Or. 330, 40 P.2d 1009 (1935); Smith v. Williams, 51 Ohio App. 464, 1 N.E.2d 643 (1935); Fulghum v. Bleakley, 177 S.C. 286, 181 S.E. 30 (1935); Shea v. Olson, 185 Wash. 143, 53 P.2d 615 (1936); Gallegher v. Davis, 37 Del. 380, 183 A. 620

(1936); Roberson v. Roberson, 193 Ark. 669, 101 S.W.2d 961 (1937); Campbell v. Paschall, 132 Tex.Civ.App. 226, 121 S.W.2d 593 (1938); Wright's Estate v. Pizel, 168 Kan. 493, 214 P.2d 328 (1950) *; Vogts v. Guerrette, 142 Colo. 527, 351 P.2d 851 (1960); Delany v. Badame, 49 Ill.2d 168, 274 N.E.2d 353 (1971); Romero v. Tilton, 78 N.M. 696, 437 P.2d 157 (1967), cert. denied 78 N.M. 704, 437 P.2d 165.

In addition, intermediate appellate courts in California indicated its law was constitutional [e. g., Ferreira v. Barham, 230 Cal.App.2d 128, 40 Cal.Rptr. 739 (1964) ], but the Supreme Court of California held the guest law unconstitutional in Brown v. Merlo, *supra*.

The earliest case, the Connecticut case of Silver v. Silver, *supra,* was a decision of a divided court, the majority of three judges holding the statute constitutional and the minority of two judges vigorously dissenting. The majority held that the statute was a matter of legislative discretion, and the minority argued that the classification specified in the statute was unreasonable and unconstitutional, since it separated gratuitous guests in automobiles from other gratuitous guests in every other type of vehicle. It asserted that no public purpose was served by this classification. The attack on constitutionality in *Silver* in the State court was based principally on the difference in treatment between automobile guests and guests in other conveyances, a much narrower challenge than we have here.

The decision of the United States Supreme Court was based entirely upon the Fourteenth Amendment of the United States Constitution.

The opposing arguments in *Silver* appear occasionally in the subsequent cases cited above, but most of the cases simply cite Silver v. Silver as having settled the question or hold the statute in question consti-

* Since this opinion was written we have learned that Kansas has declared its guest law unconstitutional, in Henry v. Bauder, Kan., 518 P.2d 362 (1974).

tutional under a State constitutional provision somewhat similar to Section 22 of the North Dakota Constitution. Typical of such provisions is that of the Oregon Constitution, cited in Perozzi v. Ganiere, *supra,* that guarantees a "remedy by due course of law for injury done [one] in his person, property, or reputation." Few of them discuss the "privileges and immunities" constitutional provision such as is contained in Section 20, or the requirement that laws of a general nature have uniform operation, as in Section 11, or even the Due Process Clause contained in Section 13 of the North Dakota Constitution. The text of these constitutional provisions is quoted in full below.

"All laws of a general nature shall have a uniform operation." Sec. 11, N. D. Constitution.

"In criminal prosecutions in any court whatever, the party accused shall have the right to a speedy and public trial; to have the process of the court to compel the attendance of witnesses in his behalf; and to appear and defend in person and with counsel. No person shall be twice put in jeopardy for the same *offense, nor be compelled in any crimi*nal case to be a witness against himself, *nor be deprived of* life, liberty or *property without due process of law."* Sec. 13, N.D. Constitution. [Emphasis added.]

"No special privileges or immunities shall ever be granted which may not be altered, revoked or repealed by the legislative assembly; nor shall any citizen or class of citizens be granted privileges or immunities which upon the same terms shall not be granted to all citizens." Sec. 20, N.D. Constitution.

We note that the provisions of the California Constitution construed in Brown v. Merlo, *supra,* Sections 11 and 21, are practically identical with Sections 11 and 20 of the North Dakota Constitution quoted above.

Equally interesting is the fact that few of the decisions upholding constitutionality of guest laws discuss the justifications advanced by proponents of such laws. These justifications are: (1) that they are intended to prevent collusion between hosts and guests, and (2) that they are designed to protect hosts against ungrateful guests who will reward hospitality by litigation. These purported justifications are fully analyzed, however, in Brown v. Merlo, *supra.*

Some of the cases holding guest statutes constitutional even refuse, in express terms, to discuss the merits of the legislation. The Illinois court, for example, in Delany v. Badame, *supra,* held that arguments that "the statute bears no substantial relation to the prevention of collusive suits; the statute bears no substantial relationship to the purpose of avoiding multiplicity of litigation; and the statute is unconstitutional since nine out of ten automobiles have public liability insurance" do not warrant judicial consideration. We disagree, for reasons which will appear below.

## OUR SCOPE OF REVIEW

The most difficult and delicate decisions to be made in cases such as this, where constitutional questions are raised, are whether and when to defer to the undoubted discretion of the Legislature to classify, to discriminate, and to choose from alternative remedies for discerned evils, and where to draw the line between permissible and unconstitutional action. The considerations to be used in making such decisions have been stated in Montana-Dakota Utilities Co. v. Johanneson, 153 N.W.2d 414 (N.D.1967), at 423:

"The State and Federal Constitutions require all laws to have uniform operation, and the granting of any special privilege or immunity as to any class of citizens is expressly prohibited. The constitutional limitations do not, however, prohibit classification, provided such classification is reasonable for the purposes of the legislation, is based upon

proper, justifiable distinctions concerning the purposes of the law, is not arbitrary, and is not a subterfuge to shield one class or to burden another, or to oppress unlawfully in its administration."

Our review of constitutional questions has some similarity to but is different from the review by the United States Supreme Court, particularly as to its review of State legislation. And our approach through the years to constitutional questions has differed from the approach of that Court.

"It is a commonplace that in the years between 1890 and 1937, the Supreme Court of the United States declared many state statutes regulating business and labor unconstitutional as violations of the Fourteenth Amendment." Paulsen, The Persistence of Substantive Due Process in the States, 34 Minn.L.Rev. 91, 93 (1950).

And see Lincoln Federal Labor Union v. Northwestern Iron & Metal Co., 335 U.S. 525, 69 S.Ct. 251, 93 L.Ed. 212 (1949); Ferguson v. Skrupa, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93, 95 A.L.R.2d 1347 (1963).

Since 1937, that Court rarely has declared State law unconstitutional on substantive due-process grounds, although often doing so on procedural due-process grounds.

In more recent years, that Court has modified its post-1937 hands-off attitude toward State economic and social legislation and has examined such legislation under the Equal Protection Clause of the Fourteenth Amendment, rather than under the Due Process Clause. Some commentators have noticed a remarkable resemblance between the "old substantive due process" and the "new equal protection." Wellington, Common Law Rules and Constitutional Double Standards: Some Notes on Adjudication, 83 Yale L.J. 221, 311 (1973).

The Federal examination of State statutes under the "new equal protection" has been on two levels. On the one level there has been a group of cases involving "inherently suspect" or "fundamental interest" classifications, which are "subjected to strict judicial scrutiny." Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583, plurality opinion (1973); Shapiro v. Thompson, 394 U.S. 618, 89 S. Ct. 1322, 22 L.Ed.2d 600 (1969). The suspect classifications include those based upon some "immutable characteristics determined solely by the accident of birth" such as race, national origin, sex, or illegitimacy," which violate "the basic concept of our system that legal burdens should bear some relationship to individual responsibility." Frontiero, supra; Glona v. American Guarantee Co., 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968).

At the other level, which involves non-suspect classifications, the Supreme Court has used the "traditional" equal-protection analysis, under which a "legislative classification must be sustained unless it is patently arbitrary and bears no rational relationship to a legitimate governmental interest." Frontiero, supra; McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).

Some commentators now are suggesting that the Supreme Court is using a new intermediate analysis, a "strict scrutiny" test, requiring a "close correspondence between statutory classification and legislative goals." Tribe, The Supreme Court, 1972 Term, 87 Harvard L.Rev. 1, 121–122 (1973); Reed v. Reed, 404 U.S. 71, 92 S. Ct. 251, 30 L.Ed.2d 225 (1971). Such a test closely approximates the test historically used by this court and some other State courts, discussed below.

The State courts have not all, and not always, followed the changing approaches of the highest Court. As pointed out by commentators (Paulsen, The Persistence of Substantive Due Process in the Courts, Minnesota Law Review, Vol. 34, p. 91; California Law Review, Vol. 61, p. 273–286; Northwestern Law Review, Vol. 53,

p. 13–32, p. 227–255; 80 Harvard Law Review 1463, 1967), even after 1937, the State courts continued to examine legislation on the basis of whether it complied with substantive due process, as well as equal protection and other constitutional provisions. Certainly this court has done so.

Throughout the years this court has regularly considered constitutionality of statutes under Sections 11, 13, and 20 of our Constitution, quoted above. We have had no hiatus such as the Federal courts had in their journey from the old due process to the new equal protection. Whatever our individual preferences might be as members of this court (and some of us might have preferred a greater degree of judicial abstention), it cannot be doubted that the power of this court to examine challenges based on the State Constitution and to decide them has been regularly invoked and regularly exercised, even during the period when the Federal courts were not doing so. A partial listing of our constitutional decisions from before 1937 to today indicates a steady course of constitutional adjudication.

Peterson v. Panovitz, 62 N.D. 328, 243 N.W. 798 (1932); Asbury Hospital v. Cass County, 72 N.D. 359, 7 N.W.2d 438 (1943), 73 N.D. 469, 16 N.W.2d 523 (1944), affirmed, 326 U.S. 207, 66 S.Ct. 61, 90 L.Ed. 6; State v. Cromwell, 72 N.D. 565, 9 N. W.2d 914 (1943); Herr v. Rudolf, 75 N.D. 91, 25 N.W.2d 916 (1947); F. W. Woolworth Co. v. Gray, 77 N.D. 757, 46 N.W.2d 295 (1951); Fradet v. City of Southwest Fargo, 79 N.D. 799, 59 N.W.2d 871 (1953); State v. E. W. Wylie Co., 79 N.D. 471, 58 N.W.2d 76 (N.D.1953); State v. Miller, 129 N.W.2d 356 (N.D.1964); Montana-Dakota Utilities Co. v. Johanneson, 153 N.W.2d 414 (N.D.1967); Melland v. Johanneson, 160 N.W.2d 107 (N.D.1968); In re Estate of Jensen, 162 N.W.2d 861 (N.D.1968); Wallegham v. Thompson, 185 N.W.2d 649 (N.D.1971); Coal Harbor Stock Farm, Inc. v. Meier, 191 N.W.2d 583 (N.D.1971); Christman v. Emineth, 212 N.W.2d 543 (N.D.1973).

While some of our decisions would pass muster under the "inherently suspect" criteria [for example, Tang v. Ping, 209 N.W.2d 624 (N.D.1973), and In re Estate of Jensen, *supra*, and others under the "traditional" equal-protection analysis], it may be that some of our statutes which we have declared unconstitutional might have passed the Federal constitutional screening. Such results are to be expected under a dual constitutional system. The Federal courts examine State statutes only to determine if they comply with the United States constitutional mandates, as in Silver v. Silver, *supra*; we examine them for that purpose and also to determine if they comply with State constitutional mandates. In addition, Federal courts should, and usually do, defer to State courts as to interpretation of their own statutes. No one should be surprised if a statute passes the one set of standards and not the other.

The duality of our role was most recently recognized by the United States Supreme Court in North Dakota State Board of Pharmacy v. Snyder's Drug Stores, Inc., 414 U.S. 156, 94 S.Ct. 407, 38 L.Ed.2d 379 (1973). We had held a North Dakota statute unconstitutional on Federal constitutional grounds, deeming ourselves bound by Liggett Co. v. Baldridge, 278 U.S. 105, 49 S.Ct. 57, 73 L.Ed. 204 (1928). The Supreme Court overruled *Liggett*, and said, "We reverse and remand . . . and free the courts and agencies of North Dakota from what the State Supreme Court deemed to be the mandate of *Liggett*", i. e., to consider the case on State constitutional and statutory grounds, free of outmoded limitations of *Liggett* which was based on the "old due process" limitation on State action.

We have, of course, exercised our power of constitutional adjudication with what each membership of the court deemed appropriate restraint: presuming that each

statute is constitutional unless there is clear proof to the contrary, resolving doubts in favor of constitutionality, recognizing that the Legislature has a broad power to make classifications, and declaring laws unconstitutional only if there is no room for any question or doubt as to their constitutionality. Montana-Dakota Utilities Co. v. Johanneson, *supra*; Christman v. Emineth, *supra*.

With this background in mind, we feel obligated to consider the constitutionality of the guest law, now that the matter has been brought before us for the first time, and to determine whether the statute contains arbitrary classifications violative of Sections 11, 13, or 20 of the North Dakota Constitution. Melland v. Johanneson, *supra*. And see Hjelle v. Sornsin Construction Co., 173 N.W.2d 431 (N.D.1969). Even when a statute has been in effect for a long time, our duty to consider its constitutionality, when the matter comes before us, continues, and this duty has been performed even in the face of prior holdings of constitutionality. Melland v. Johanneson, *supra,* overruling Lindberg v. Benson, 70 N.W.2d 42 (N.D.1955).

Furthermore, as the foregoing historical comments show, we are obliged to use different standards in considering federal constitutionality and state constitutionality.

## THE ATTACK ON THE GUEST LAW

Since a nonpaying guest can recover for damages caused by negligence of his host only if he can prove "the intoxication, willful misconduct, or gross negligence" of the driver, and only if his injury occurs upon a public highway, it will be seen that a passenger can recover for ordinary negligence if he pays for transportation, but not if he doesn't; if the accident occurs on private property, but not if it occurs on a highway, or if he is just outside the car, but not if he is barely inside it when the accident occurs. Since "intoxication," as used in the statute has been construed, in Borstad v. La Roque, 98 N.W.2d 16 (N.D.

1959), to refer to ordinary negligence induced by intoxication, the guest can recover if ordinary negligence was caused by intoxication, but not otherwise. Further, the passenger can recover if he owns or provides the automobile and lets a former passenger drive. Degenstein v. Ehrman, 145 N.W.2d 493 (N.D.1966). The injured persons most frequently deprived of a remedy by the guest law are those the driver is most anxious to protect—his family and his friends. Because of these apparently anomalous and incongruous consequences of the guest law, the plaintiffs here and other critics of guest laws (inter alia, North Dakota Law Review, Fall, 1973, vol. 50, p. 139; Drake Law Review, Sept.1973, vol. 23, p. 216) claim that a guest law makes an impermissible classification between persons who cannot recover for ordinary negligence in automobile accidents and those who can recover for ordinary negligence in all other situations, that the statute violates the constitutional provision requiring all laws to have uniform operation, and that it grants special privileges and immunities to one class of citizens. They allege that there is no justifiable State purpose involved in the distinction made by the law and that it is arbitrary and oppressive and therefore violative of Sections 11, 13, and 20 of the North Dakota Constitution.

## JUSTIFICATIONS OFFERED TO SUPPORT GUEST LAW

The first justification given for the statute is a fear of collusion between hosts and guests. Such a justification is faulty in many respects. In the first place, the statute arbitrarily takes away a remedy from all guests, even including those who plainly are not in collusion with hosts, in order to reach those who may be. It is therefore suspect as being constitutionally overbroad. Christman v. Emineth, *supra*; Melland v. Johanneson, *supra*. Second, such a justification has already been rejected in this State. In Degenstein v. Ehrman, 145 N.W.2d 493, 502 (N.D.1966), we

pointed out that "a guest statute is no final answer to collusion. It is still possible for the dishonest to fabricate evidence to support the higher degree of fault required by the statute. 2 Harper & James Torts 961, 1956." As one example, it would be simple for a colluding host and guest to assert that payment had been made for the transportation, or that the driver was intoxicated, thereby withdrawing the case from the guest statute. In all other cases, we rely upon the standard remedies of perjury, the efficacy of cross-examination, the availability of pretrial discovery, and the good sense of juries to detect false testimony if it should occur. We do not withdraw the remedy from all injured persons in order to avoid a rare recovery based upon false testimony.

Third, we do not forbid other types of action where collusion might be expected to occur even more frequently than in guest statutes. For example, we permit actions by children against their parents, as in Nuelle v. Wells, 154 N.W.2d 364 (N.D. 1967), and by wife against husband, as in Fitzmaurice v. Fitzmaurice, 62 N.D. 191, 242 N.W. 526 (1932). Surely intrafamily suits present more of a danger of fabrication of evidence than most automobile tort cases, yet we routinely enforce ordinary negligence rules in suits between members of a family.

In Glona v. American Guarantee Co., 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed. 441 (1968), Louisiana statutes and decisions prohibiting recovery for wrongful death by the mother of a deceased illegitimate child were held unconstitutional in spite of a possible "temptation to some to assert motherhood fraudulently." That fear was dismissed as one which "concerns burden of proof." We agree.

We hold that the arbitrary distinction between paying and nonpaying guests contained in Chapter 39–15 is not justified by an illusory fear of collusion or perjury.

The second justification for the statute, that it is somehow ungrateful for the guest to sue his benefactor, as if he were a dog biting the hand that fed it, is an oddity in the law. It is contrary to the express policy of our negligence statutes, expressed in Section 9–10–06, N.D.C.C.:

"Everyone is responsible not only for the result of his willful acts but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person. . . ."

The notion that it is improper to allow a guest to sue for ordinary negligence is not applied to any other host-guest relationship, such as that arising from entertaining in a private home. See Keeler v. Keeler, 337 F.Supp. 824 (D.C.N.D.1972), construing North Dakota law.

We note in passing that Section 9–10–06, N.D.C.C., quoted *supra*, was amended and the quoted portion was re-enacted in 1973, and that the Legislature thereby gave evidence of its continuing indorsement of the doctrine of general liability in tort for ordinary negligence.

The actual operation of the guest law in practice is expressed in Prosser, Torts, 4th Edition, at page 187:

"The typical guest act case is that of the driver who offers his friend a lift to the office or invites him out to dinner, negligently drives him into a collision, and fractures his skull—after which the driver and his insurance company take refuge in the statute, step out of the picture, and leave the guest to bear his own loss. If this is good social policy, it at least appears under a novel front."

In other situations where a similar doctrine might be expected, if public policy supports the guest law, we have no such restrictions on the right to sue. For example, we do not permit charitable hospitals or other charities to claim immunity from suit. Rickbeil v. Grafton Deaconess Hospital, 74 N.D. 525, 23 N.W.2d 247, 166 A.L.R. 99 (1946); Granger v. Deaconess Hospital of Grand Forks, 138 N.W.2d 443 (N.D.1965).

We find no public policy, constitutionally permissible, which can justify the harsh and arbitrary deviation from the general rule of liability for ordinary negligence merely because of the existence of "hospitality" in the use of an automobile.

## CHANGES SINCE PASSAGE OF THE GUEST LAW

█ In constitutional law, as in other matters, times change and doctrines change with the times. Ferch v. Housing Authority of Cass County, 79 N.D. 764, 59 N.W.2d 849 (1953). One example is in the field of charitable immunity, mentioned above. At the time when most of the decisions upholding the constitutionality of guest laws, cited above, were written, there was a comparable immunity of charitable institutions to suit. Prior to 1942, only two or three States had rejected charitable immunity outright, but by 1971, 31 States had done so. Prosser, op. cit., p. 996.

Similarly, at the time when Silver v. Silver, *supra,* was first decided, automobile insurance was relatively unknown. The Supreme Court of the United States could then speak of "the increasing frequency of litigation in which passengers carried gratuitously in automobiles, often casual guests or licensees, have sought the recovery of large sums for injuries alleged to have been due to negligent operation," without referring to insurance at all. But today, when 85 per cent of all automobiles in California are insured, the California court says:

". . . the statute can no longer sequester the defense that it is a necessary means to thwart 'ungrateful' guests. In plain language, there is simply no notion of 'ingratitude' in suing your host's *insurer."* Brown v. Merlo, *supra.* [Emphasis in original.]

The presence of insurance is even more persuasive in North Dakota, where the figure must be close to 100 per cent, if we include the coverage provided by the North Dakota Unsatisfied Judgment Fund, pursuant to Chapter 39–17, N.D.C.C., of vehicles otherwise uninsured.

As was said by the Rhode Island court in Labree v. Major, R.I., 306 A.2d 808, 815 (1973), in one of many cases where States which do not have guest laws have declined to enforce guest laws of other States because of disapproval of the doctrine as a matter of public policy,

". . . enactment of legislation in Massachusetts for compulsory automobile liability insurance clouds the rationale of the policy that a gross-negligence standard was necessary to protect against ungrateful guests."

Other cases declining to enforce guest laws of other States as being against the public policy of the forum State are Clark v. Clark, 107 N.H. 351, 222 A.2d 205 (1966); Kopp v. Rechtzigel, 273 Minn. 441, 141 N.W.2d 526 (1966); Mellk v. Sarahson, 49 N.J. 226, 229 A.2d 625 (1967); Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279, 95 A.L.R.2d 1 (1963); Wilcox v. Wilcox, 26 Wis.2d 617, 133 N.W.2d 408 (1965); Bolgrean v. Stich, 293 Minn. 8, 196 N.W.2d 442 (1972).

Another recent development, the passage of a comparative-negligence law, reduces the viability of the guest law. Following a trend in other States (adoption in 10 States plus many Federal Acts since 1910, according to Prosser, *supra,* p. 436), the North Dakota Legislature in 1973 adopted Section 9–10–07, N.D.C.C., a general comparative-negligence statute. While it is no doubt possible to reconcile the guest law, with its "gross" negligence which precludes recovery, with a comparative-negligence law which allows recovery or refuses it depending upon infinite gradations of fault to be determined by a jury, the challenge would certainly be formidable and the possibilities of confusion great. In Nebraska, where guest law and comparative-negligence statutes coexist, a commentator has observed that the Supreme Court of that State has reversed jury verdicts in "an ex-

tremely large percentage of these cases." John M. Gradwohl, Comparative Negligence of an Automobile Guest—Apportionment of Damages Under the Comparative Negligence Statute, Nebraska Law Review, Vol. 33, pp. 54–72, Nov.1953.

Although it is a fact that the North Dakota Legislature has refused to repeal the guest law several times, we suggest that its adoption of the comparative-negligence law and re-enactment of the general law as to liability for ordinary negligence (Sec. 9–10–06, N.D.C.C., quoted *supra*), are essentially incompatible with retention of the guest law at the same session of the Legislature. The Supreme Court of Wisconsin seems to have been of a similar opinion when it abolished its judge-made doctrine of gross negligence in Bielski v. Schulze, 16 Wis.2d 1, 114 N.W.2d 105 (1962).

We are asked here to declare Chapter 39–15 unconstitutional under the Fourteenth Amendment of the Federal Constitution and under Sections 11, 13, and 20 of the North Dakota Constitution. We decline to do so on Federal constitutional grounds, in view of the foregoing analysis, believing that the Federal courts would (and should) leave the matter to the State courts and might perhaps hold that the statute complies with minimum Federal standards, as they did in Silver v. Silver, *supra*. To this extent we disagree with Brown v. Merlo, *supra*, which held that the California statute violated both Federal and State Constitutions.

## CONCLUSION

■■ For the reasons given, and using the scope of adjudication we have outlined at length, we find that the guest law of North Dakota, Chapter 39–15, N.D.C.C., does not operate uniformly and that it gives a special immunity from liability for ordinary negligence to a special category of persons, namely, owners and drivers of automobiles who negligently cause injury to their passengers, and it is therefore violative of the Constitution of North Dakota.

We find that the statutory classification is unreasonable for any proper purpose of legislation and is not based upon justifiable distinctions concerning any proper purpose of the law, and that it is arbitrary and over-inclusive. We make these holdings after giving consideration to events occurring and trends established since the passage of the law in 1931. Such events and trends include the nearly universal existence of liability insurance, the adoption of comparative negligence in this State, the trend away from immunity from suit (as in denial of charitable immunity), the waning of fear of collusive suits, the lessened likelihood of surprise in trials due to adoption of pretrial discovery procedures, and the greater experience with automobile tort litigation since 1931. All of these factors are new, and could not have been completely anticipated by the authors of the guest law. In addition, we have considered factors present when the law was passed, such as the inherent anomalies and incongruities referred to in the opening paragraph of the section of this opinion entitled "The Attack on the Guest Law" which experience has done nothing to remove.

Affirmed.

ERICKSTAD, C. J., and TEIGEN, KNUDSON and PAULSON, JJ., concur.

## ON PETITION FOR REHEARING

■ The appellant has filed a petition for rehearing asking for a determination as to whether the decision in this case is prospective or retrospective.

The decision in this case will govern this case and otherwise will be prospective only, applying to claims for relief accruing on and subsequent to the date of this opinion, March 29, 1974.

ERICKSTAD, C. J., and TEIGEN, PAULSON and KNUDSON, JJ., concur.